IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSPRO ENTERPRISES, LP, and MICHAEL KLEINMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:15-CV-00497-RP |
| CITY OF AUSTIN | § § | |
| Defendant. | § § | |

## ORDER

Before the Court in the above-styled action is Defendant City of Austin's Motion to Dismiss for Lack of Jurisdiction (Clerk's Docket # 8) and the responsive pleadings thereto. The Court considered the factual record, the parties' pleadings, and the applicable law, and issues the following order.

## BACKGROUND

Plaintiffs Auspro Enterprises, LP and Michael Kleinman own property along the Colorado River across from the Roy G. Guerrero Colorado River Metropolitan Park ("the Park") owned by Defendant City of Austin. The City performed a construction project in the park in 2013 and 2014 that involved excavating "large amounts of dirt from various areas of the Park" and placing it "in an area near the river." (Pls.' First Am. Original Compl., ¶ 8). Due to Defendant's alleged failure to prevent erosion during construction, "fill dirt, sand, gravel and rocks used in the construction flowed into the Colorado River during times of heavy rain run-off, and have formed a significant dirt, rock and silt sandbar along and into the center of the river in front of the Park and in front of Plaintiffs' properties." (*Id.* ¶ 9). The sandbar "has caused a noticeable change in the course and flow of the river and has negatively impacted the wetlands habitat that otherwise flourishes along this stretch of the Colorado River." (*Id.*). Plaintiffs aver that the sandbar shows

1

"no signs that it will wash away and revert to its prior state," and that "[w]ith each heavy rain additional sand, gravel, rocks and silt make their way into the river from the City's property." (*Id.*).

Plaintiffs allege that Defendant's "fail[ure] to take reasonable steps to prevent . . . erosion from running off and draining . . . into the Colorado River" violates restrictions on pollutant discharges in the Clean Water Act ("CWA"). (*Id.*¶ 11 (citing CWA, 33 U.S.C. §§ 1311(a), 1319, and 1365(a))). Defendants have moved to dismiss on the basis that Plaintiffs have failed to allege an "ongoing" violation of the CWA as required for citizen suits under 33 U.S.C. §1365(a). Plaintiffs have responded and Defendant has replied, and the matter is ripe for determination.

## STANDARD OF REVIEW

Federal courts have limited jurisdiction and therefore can adjudicate claims only when jurisdiction is conferred by statute and the Constitution. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, along with the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008).

## ANALYSIS

The Clean Water Act ("the Act"), 86 Stat. 816, 33 U.S.C. §521 *et seq.*, was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). The Act prohibits the discharge of any pollutant from a "point

2

source"[1] unless authorized by a permit issued under the National Pollutant Discharge Elimination System (NPDES). 33 U.S.C. §§ 1311(a), 1342. Under specified conditions, the Act affords "any citizen" the opportunity to commence a civil action against any person[2] "alleged to be in violation of . . . an effluent standard or limitation." 33 U.S.C. § 1365(a).

To bring suit under the Act, "citizen-plaintiffs [must] allege a state of either continuous or intermittent violation – that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987); *see also Hamker v. Diamond Shamrock Chemical Co.*, 756 F. 2d 392, 395 – 96 (5th Cir. 1985). It is settled law that citizens cannot sue under the Act for wholly past violations of the Act. It is settled in the Fifth Circuit that "[m]ere continuing residual effects resulting from a discharge are not equivalent to a continuing discharge." *Hamker*, 756 F.2d at 397.[3]

The issue, then, is whether the CWA violation alleged in this case is "continuous or intermittent" such that it can be characterized as "ongoing" rather than past. Plaintiffs maintain that they have alleged an ongoing violation of the Clean Water Act: Defendant "placed the excavated dirt in an area near the river," (Pls.' Compl. ¶ 8), "erosion occurred along the portion of the property leading down to the river," and "[w]ith each heavy rain additional sand, gravel, rocks and silt make their way into the river from the City's property." (*Id.* ¶ 9). Defendant

---

[1] The parties have not contested – and the Court does not yet have a factual record sufficient to determine as a matter of law – whether the "area near the river" where Defendant placed its excavated material, (Compl. ¶8), constitutes a "point source" under the CWA. The Act defines "point source" as, among other things, "any discernible, confined and discrete conveyance, including but not limited to any . . . ditch, channel . . . [or] container . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). For purposes of this Motion, the Court considers Plaintiffs' pleadings sufficient to allege that Defendant's pile is a "discernible, confined and discrete conveyance."

[2] The word "person" includes "any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution." 33 U.S.C. § 1365(a).

[3] Defendant cites many cases supporting the proposition that a past violation – or the residual effects thereof – cannot support a CWA violation. *E.g.*, *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305 (2d Cir. 1993) (decomposition of previously discharged shotgun pellets in Long Island Sound does not satisfy present-violation requirement); *Prisco v. New York*, 902 F. Supp. 374 (S.D.N.Y. 1995) (no continuing violation where defendant discharged to wetland in the past).

contests Plaintiffs' characterization. In its account, the City's actions began in 2013 and ended in 2014. The erosion and rainfall conveying materials from the city's pile of excavated material to the Colorado River are "acts of God" for which the City cannot be held responsible.

Fundamentally, the issue before the Court is whether the transmission by rainfall of pollutants from the pile of excavated material to the Colorado River can be attributed to the City of Austin for purposes of assigning CWA liability.[4] Cases from other circuits and Fifth Circuit precedent suggest that it can. In *Sierra Club v. El Paso Gold Mines, Inc.*, the Tenth Circuit relied on the meaning of the phrase "discharge of a pollutant" in the CWA[5] to hold "point source owners . . . can be liable for the discharge of pollutants occurring on their land, whether or not they acted in some way to cause the discharge." 421 F.3d 1133, 1145 (10th Cir. 2005). It is the case, wrote the court, where "if you own the leaky 'faucet,' you are responsible for its 'drips.'" *Id.*

In *Sierra Club v. Abston*, the Fifth Circuit addressed pollution emanating from "spoil piles," or piles of rock and dirt built in connection with mining operations. The court wrote that "[g]ravity flow, resulting in a discharge into a navigable body of water, may be part of a point source discharge if the [defendant] at least initially collected or channeled the water and other materials." 620 F.2d 41, 45 (5th Cir. 1980). The court identified a "discharge" even though the miners themselves did not proactively introduce pollutants into the water. "A point source of pollution may also be present," wrote the court,

> [when], during periods of precipitation, erosion of spoil pile walls results in discharges into a navigable body of water by means of ditches, gullies and similar conveyances, even if the miners have done nothing beyond the mere collection of rock and other materials. . . . Nothing in the Act relieves miners from liability simply because the operators did not actually construct those conveyances, so long as they are reasonably likely to be the means by which pollutants are ultimately deposited into a navigable

---

[4] The Court has not been asked to – and does not – address two factual questions at this stage. The first is whether pollutants from the pile of excavated materials have in fact been discharged into the Colorado River. The second is whether pollutants from the pile will again be discharged into the river.
[5] "[A]ny addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

4

body of water. *Id.*

The facts pleaded by Plaintiffs in this Action are analogous to those in *Abston*. During "periods of precipitation," erosion results in discharges into a navigable body of water. "Nothing in the Act relieves [Defendant] from liability simply because [they] did not actually construct" the conveyances by which the materials are introduced into the navigable waters, "so long as they are reasonably likely to be the means by which pollutants are ultimately deposited into a navigable body of water." In this case, "citizen-plaintiffs [have made] a good-faith allegation of continuous or intermittent violation" of the Clean Water Act, *Gwaltney*, 484 U.S. at 64, and thus jurisdiction is proper.

## CONCLUSION

The Court hereby **DENIES** the Motion to Dismiss of Defendant City of Austin (Clerk's Dkt. # 8).

**SIGNED** on October 30, 2015.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE